By the Court.
Bosworth, J.
It seems to be settled law, in this state, that when the holder of a note sends it out of the state to be presented for payment, at the place where, by its terms, it is payable, and it is protested for non-payment, and notice of protest is duly mailed to the owner of the note, prior endorsers will be holden, if the owner of the note gives them prompt notice, upon the receipt of the notice mailed to himself. This result will follow, even though it appears that the prior endorsers would have received notice at an earlier day if the notices had been mailed directly -to them. (Mead v. Engs, 5 Cow., R. 808; Bank of U. S. v. Davis, 2 Hill. 457-8; Palen v. Shurtleff, 9 Metcalf, 581.) In the cases here cited, the notices, though not mailed direct to the endorsers sought to be charged, were received by due eourse of mail by the endorser to whom they had been enclosed, and he on the receipt of them duly notified the prior endorsers.
In this case, the notice enclosed to the plaintiffs for the defendant was not received by them at all. It was no part of the purpose of mailing notices to the plaintiffs, to charge them as endorsers. They owned the note, and it had been protested for them by their agent.
A question may here arise, whether an owner who sends a note out of the state for collection, endorsed by persons residing, and known to him to reside, in the same place with himself, if he does not advise his agent where the endorsers reside, so that notice may be mailed direct to them, in case the note is protested, does not take the risk of the mail, if notices for the endorsers are sent enclosed in a letter directed to himself If instead of being owner, he was merely endorser of a note owned by others, it would seem to be reasonable, that as soon as without laches on *209 bis part, he received a notice, the mailing of which fixed his liability, he might charge a prior endorser by giving him prompt notice, especially when it is held that he is not discharged from liability, ■ by an omission of the holder to notify the prior endorsers.
A mere endorser might well suppose a note was paid, not having received a notice of its protest within the time it should arrive, if the proper steps had been taken to charge him. Naturally so supposing, he would not be apt to inquire whether it had been paid or not. But an owner of the note, who had sent it to an agent for collection, and who, as in this case, should have received notice of protest of the note, by the 7th or 8th of February, at the farthest, or advice of payment at a date not much later, but not having received either within the usual time, would naturally infer, that some omission of duty by his agent, or some casualty had occurred, to prevent the receipt of notices that he might probably be expected to have forwarded.
In such a case, interest, if not duty to the endorsers before him, if diligence alone on his part could charge them, would seem to require of the owner that he should ascertain what had been done with the note, so that if any claim was to be made on the prior endorsers, he should notify them of it as soon, as by the use of ordinary diligence, he would ascertain that the note, instead of being paid, had been protested.
Yery slight diligence would have enabled the plaintiffs to ascertain, during February, what had been done with the note, and to have notified the defendant. No inquiries were made by the plaintiffs, however, until the last of April or first of May. Those inquiries were promptly answered, and the earliest notice to the defendant that can be pretended, was given as late as the middle of May.
It is, as a general rule, the duty of the holder of a note, to give on the day after a note is protested, notice of the fact to any party he intends to charge, either by personally serving it, or mailing it, as the facts of the case mayrequire.
The question is obviously reduced to this: is a bank which acts as a mere agent to collect, or if not paid,- to protest a note, to be treated in all respects as owher, for the purpose of giving notice to its principal, the actual owner ? and will a notice mailed *210 to tbe latter, so as to charge him as endorser, if not owner, enable him, whether the notice reaches him or not, on being informed of the fact of the dishonor and protest, to charge a prior endorser, by promptly notifying him, although information of the fact may not have been acquired earlier than ninety days after the protest, when, by due course of mail, it should .have been received in six or seven days at the longest ?
Or is such an endorser, and actual owner, who receives neither notice of protest, nor advice of payment, at the time notice should have been received, if mailed at the proper time, or advice of payment should have been received, if forwarded, according to the usual course of business, bound to inquire of his agent, and use some diligence to give notice to a prior endorser, if it shall turn out that the note has been protested?
Is he bound to inquire at all, at the peril of losing the responsibility of prior endorsers? or may he continue passive, until at some uncertain period, he may casually learn that the note was not paid, but was protested ? If bound to inquire at all, how long may he delay inquiry, after the expiration of the period, at which he should have been advised in relation to the note ? Will he he exempt from the imputation of negligence, if after double the usual period has elapsed, he omits to inquire ? If the result of this controversy turns wholly on the question of due diligence, then that question, in this case, is one of law, as the facts on which its determination depends are undisputed, and neither have been found by the referee, nor are to be found by us upon conflicting evidence. (Carroll v. Upton, 8 Coms. 272.)
If it was the duty of the plaintiffs to make any inquiries of their-agent, in order to preserve the liability of the defendant as a prior endorser, in consequence of not receiving notice of protest in the usual time, or advice of payment according to the course of business, then it will not be denied, I think, that there was a want of due diligence in this case, even if the right 'to recover depends on that question alone, unless it can be made to appear as matter of fact, that it was according to the customary course of business, to omit giving such advice for a period, substantially, as long as had elapsed before the plaintiffs wrote to their agent for information.
As the rule is stated in elementary works, “ each party to a *211 bill or note, whether by endorsement or mere delivery, has, in all cases, until the day after he has received notice, to give or forward notice to his prior endorser, and so on till the notice has reached the drawer.” (Chitty on Bills, 520, 521.)
And a bank or banker, and, perhaps, other agents, holding a bill or note, to obtain payment, when not acting as a mere servant, is considered, as respects this rule, as a distinct party to the instrument, and is allowed a day to give notice to his customer or employer, as if he had himself been a holder in his own right. (Id. Colt v. Noble, 5 Mass., 167, and cases cited above; Howard v. Jones, 1 Hill, 263.)
Adopting this rule, and applying it to the full extent to which the facts of any adjudged case, to which our attention has been called, carries it, we are still without any direct authority upon the question, whether in a case like this, the owner of a note, on failing to receive advice respecting it in the due course of mail, either of payment according to the ordinary course of business, or of protest according to the methods of proceeding requisite to charge an endorser, is subject to the imputation of laches, by which his former endorser is discharged.
If the plaintiffs had instructed the bank to which they sent the note for collection, where the endorser resided, and to mail notice to him in case it was protested, no question could have arisen, if the instructions had been followed. In such a case due diligence would have been used to notify the endorser, and his liability would have been fixed, whether he received the notice or not. Not having done that, but on the contrary having allowed the bank to mail notice to themselves only, we are inclined to the opinion that they took the risk of the notice reaching them by due course of mail, and that, failing to so receive it, and to notify the defendant as early as would have been necessary, if they had so received it, he is discharged.
But it is not necessary to decide, that if, on failure to receive notice of protest or advice of payment, they had written promptly, on such intelligence being due, to ascertain the fate of the note, and on being promptly informed, they had notified the defendant, he would nevertheless have been discharged.
Even if such diligence would be sufficient to retain the liability of the endorser, yet as according to the facts of this case, as they *212 now appear, no sucb diligence can be pretended, the judgment must be reversed. The plaintiffs did not write for information, until the latter part of April. This long delay is wholly unexcused.
What facts may be established, and what questions they may present, cannot be anticipated. It is enough to say, that on the facts deducible from the evidence given on the trial of this action, the defendant is not liable.
This result renders it unnecessary to act upon the motion for a new trial, made on the ground of newly discovered evidence. Such a motion can properly be made only at Special Term. If . made there, and denied, an appeal from the order denying a new trial, will entitle the appellant to be heard on the appeal at General Term, on all the papers on which his motion was decided at the Special Term.
The judgment must be reversed, the report of the referee set aside, the rule of reference vacated, and a new trial, granted, with costs to abide the event.